UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADAM JOHNSON, KELLY GRIFFIN, KEITH WESOLOWSKI, PETER JOHNSON and BRACKIE BRYANT et al. Individually And On Behalf of All Others Similarly Situated,<br><br>                                          **Plaintiffs,**<br><br>                  - *against* -<br><br>FANDUEL, INC., a Delaware corporation,<br><br>                  - *and* -<br><br>DRAFTKINGS, INC. a Delaware corporation,<br><br>                        **Defendants.** | Jury Trial Demanded<br><br>Case No. 15-cv-7963-GHW<br><br>Hon. Gregory H. Woods, U.S.D.J.<br>Hon. James L. Cott, U.S.M.J. |

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION UNDER F.R.C.P. 65(a)</u>

Plaintiffs ADAM JOHNSON, KELLY GRIFFIN, KEITH WESOLOWSKI, PETER JOHNSON and BRACKIE BRYANT ("Plaintiffs"), individually, and on behalf of all others similarly situated, by and through counsel, respectfully request this Court enter an Order under F.R.C.P. 65(a) for a Preliminary Injunction against Defendants FanDuel, Inc. ("FanDuel") and DraftKings, Inc. ("DraftKings"), (collectively "Defendants") to refrain from using any money from customer accounts for operating expenses or any other use, and to submit proof to Plaintiffs and the Court that all customer money is in segregated accounts and available for immediate distribution to customers if requested.

The Court may issue a preliminary injunction under Rule 65(a) when the party seeking one shows that "irreparable injury is *likely* in the absence of an injunction." *See Winter v. NRDC, Inc.*, 555 U.S. 7 (2008) (emphasis in original). Specifically, Plaintiffs here must show (1) that they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the

absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) the injunction is in the public interest. *See Vaguely Qualified Prods. LLC v. Metro. Trans. Auth.*, 2015 U.S. Dist. LEXIS 138340 *15-16 (S.D.N.Y. Oct. 7, 2015) (*citing Winter*). Plaintiffs easily meet those burdens here.

1. <u>**Plaintiffs Are Likely To Succeed On Merits**</u>

Plaintiffs are likely to succeed on the merits of this motion because they are only asking Defendants to do something they are both required to do and already purport to do. Defendants own and operate Daily Fantasy Sports websites that have come under increasing scrutiny from federal and state authorities. Plaintiffs seek to represent a class of potentially millions of Americans with accounts on Defendants' websites. *See* First Amended Class Action Complaint ("Complaint"), DE 6 at ¶¶ 3, 76. Plaintiffs' and the proposed classes' keep accounts on Defendants' websites with real money that can be used to enter into weekly or daily contests. *See id.* at ¶¶ 9-12. Defendants take money from each entry as a fee and pay out winnings; Defendants also sometimes add their own money to prize pools when entries fall short of a guaranteed prize pool. *See id.* at ¶¶ 4-5. DraftKings, on its website, claims that it keeps player money segregated from DraftKings own operating account ([https://www.draftkings.com/help/why-is-it-legal](https://www.draftkings.com/help/why-is-it-legal), accessed October 19, 2015):



In addition, both FanDuel and DraftKings, as members of the Fantasy Sports Trade Association, are required to keep player funds segregated:

**Segregation of Player Funds**

The signatory company will hold player funds (whether they are funds on deposit, or as entry fees in live games) separate from their operational funds. Player funds will not be used to fund the growth of their business and at no time are player funds at risk if the company were to cease doing business. Notwithstanding the above, signatory companies recognize that all prizes are paid from the general assets of the signatory companies, and the winners are not paid out of a pool consisting of funds received for any given contest. Stated another way, signatory companies recognize they must pay winners of a contest the announced prize irrespective of the amount of funds received from entrants in that particular contest. Further, it is recommended that each company has an annual audit performed, ensuring that the appropriate player funds are being segregated.

*See* http://fsta.org/about/fsta-paid-entry-contest-operator-charter/ (accessed October 19, 2015).

> **2.** **Plaintiffs Are Likely To Suffer Irreparable Harm**

> > a. Defendants Are Facing Scrutiny From State and Federal Authorities Which Customer Funds In Jeopardy

Defendants own and operate Daily Fantasy Sports websites that have come under increasing scrutiny from federal and state authorities. According to news reports, these companies face federal and state actions from the following authorities:

| Headline | Source | Link To Article |
|---|---|---|
| **"Fantasy Sports Said to Attract F.B.I. Scrutiny"** | New York Times, October 14, 2015 | http://www.nytimes.com/2015/10/15/sports/draftkings-fanduel-fbi-investigation.html |
| **"Fantasy Sports Trade Association Gets Subpoena From U.S. Prosecutor"** | Wall Street Journal, October 16, 2015 | http://www.wsj.com/articles/fantasy-sports-trade-association-gets-subpoena-from-u-s-prosecutor-1445030125 |
| **"DraftKings and FanDuel Are No Longer Allowed In Nevada"** | Fortune.com, October 15, 2015 | http://fortune.com/2015/10/15/fantasy-sports-nevada/ |
| **"New York Attorney General Opens Inquiry Into Fantasy Sports Sites"** | New York Times, October 6, 2015 | http://www.nytimes.com/2015/10/07/sports/draftkings-fanduel-inquiry-new-york-attorney-general.html |

Should any of these investigations or actions by federal or state authorities result in criminal action against Defendants, customer money would be in jeopardy of being frozen or used by Defendants for debt, payments to investors, legal fees or other non-customer refund uses.

> b. Customers Have Previously Had Accounts Frozen After Websites Determined to Be Gambling Shutdown By Federal Authorities

There is precedent for customers losing money when their accounts were frozen online due to federal action. On April 15, 2011, all online poker sites operating in the United States were shut down and player accounts frozen. *See* Bloomberg News, "Online Poker Customer Accounts Frozen as U.S. Indicts Operators" (accessed at http://www.bloomberg.com/news/articles/2011-04-18/online-poker-player-accounts-frozen-amid-fbi-gambling-probe on October 19, 2015). According to the news accounts, 76 bank accounts in 14 countries were frozen. *Id.* One site, FullTilt Poker, continued to tell customers their money was safe, but in reality could not pay the $350 million it owed them. *See*

https://www.fbi.gov/newyork/press-releases/2013/former-full-tilt-poker-ceo-pleads-guilty-and-is-sentenced-in-manhattan-federal-court (accessed October 19, 2015).

A FanDuel representative noted this discrepancy between public statements and reality:



Screenshot from https://rotogrinders.com/threads/user-funds-account-16760 (October 19, 2015).

Finally, for the first week ever, Defendants' revenue fell from one week to the next, despite Defendants continuing to spend tens of millions of dollars on television advertising. *See*

http://www.legalsportsreport.com/5426/draftkings-and-fanduel-nfl-week-6 (accessed October 19, 2015); *see also* https://twitter.com/darrenrovell/status/656136142878867456).

In sum, there is a high risk of customers having accounts frozen or otherwise losing access to funds as Defendants continue to spend tens of millions of dollars on television advertising but lose users and face heavy scrutiny from federal and state authorities.

### 3. Balance Of Equities In Plaintiffs' Favor Because Defendants Are Already Required To And Publicly Claim To Segregate Funds

The balance of equities favors Plaintiffs here because Plaintiffs are merely asking Defendants to do what they are already required to do, and what they say they do. Defendants do not have to take any additional action, if they are truly segregating funds already, other than provide proof that they are doing so and continuing to do so. Providing proof would also help Defendants assure customers that their money is safe and secure and would provide a third-party validation for Defendants' claims. In short, the balance of equities weighs heavy for Plaintiffs here.

### 4. Public Interest Supports Injunction Here

Finally, the public interest strongly supports a preliminary injunction here. As unregulated entities, there is currently no independent verification of Defendants' claims they segregate customer money, and no other authority that can immediately ensure customer money is safe other than this Court through this process.    Millions of Americans use Defendants' sites every day and have money in online accounts. Should Defendants' freeze or otherwise use customer money for operating or other uses, Plaintiffs would likely never be able to recover their money from Defendants or could only do so long after the underlying litigation is complete. Defendants have powerful investors with more than a billion dollars at stake (*see*, e.g., http://fortune.com/2015/04/06/draftkings-and-fanduel-close-in-on-massive-new-

investments/;http://www.wsj.com/articles/fantasy-sports-create-billion-dollar-startups-1436846402) and individual customers would not be able to protect their interests against larger interests with much larger claims to Defendants' assets.

## CONCLUSION

By virtue of these facts, Plaintiffs move this Court to enter a preliminary injunction requiring Defendants to segregate customer funds from operating funds and provide ongoing proof to the Court and Plaintiffs of this segregation.

Dated: October 19, 2015        By:   s/ Paul C. Whalen
                                      Paul C. Whalen (PW1300)
                                      LAW OFFICE OF PAUL C. WHALEN, P.C.
                                      768 Plandome Road
                                      Manhasset, NY 11030
                                      (516) 426-6870 telephone
                                      (212) 658-9685 facsimile
                                      pcwhalen@gmail.com

                                      **JONES WARD PLC**
                                      Jasper D. Ward IV
                                      Alex C. Davis
                                      Marion E. Taylor Building
                                      312 S. Fourth Street, Sixth Floor
                                      Louisville, Kentucky 40202
                                      Tel. (502) 882-6000
                                      Fax (502) 587-2007
                                      jasper@jonesward.com
                                      alex@jonesward.com

                                      Counsel for the Plaintiffs and Proposed Classes